# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47588-0-II |
| Respondent, | |
| v. | |
| FLOYDALE L. ECKLES, JR., | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, P.J. — Floydale Eckles, Jr. appeals his bench trial convictions and sentencing conditions for three counts of child rape, and one count of attempted child rape. We hold that the community custody condition prohibiting Eckles from entering places where alcohol is primarily sold is crime related and proper. However, we remand to the trial court to (1) correct a clerical error in the judgment and sentence, (2) strike one unconstitutionally vague community custody condition, (3) strike another noncrime-related community custody condition, and (4) make an individualized determination of Eckles's ability to pay legal financial obligations (LFOs). We also hold that the trial court properly granted the State's continuance motion and that Eckles's counsel's performance was not deficient for failing to object to this motion. We affirm Eckles's convictions. But we reverse his sentence in part and remand for proceedings consistent with this opinion.

FACTS

I. CHARGES AND MOTION TO CONTINUE TRIAL

The State charged Eckles with three counts of child rape, one count of attempted child rape, and one count of child molestation. These charges involved two victims, KT and KR,[1] who were between the ages of 12 and 15 years old. Because the background facts are largely irrelevant to the issues raised on appeal, the details of the crimes are not repeated here.

Trial was set for January 20, 2015, but on that date the State moved for a continuance because the prosecutor was in a homicide trial set to last two to three weeks. Defense counsel did not object to the continuance. The trial court ruled that there was good cause to continue the trial to February 9. Eckles filed a motion to dismiss for violation of his time for trial right. On February 9, the trial court noted Eckles's earlier time for trial dismissal motion. Without expressly ruling on Eckles's motion, the trial court proceeded with trial.

II. ECKLES'S DRUG AND ALCOHOL USE

Eckles testified that he attended parties where he consumed drugs and alcohol and that he was drunk at the party during which he admitted he had sexual intercourse with KT. KT was under the influence of drugs or alcohol during each rape. KR was under the influence of drugs and alcohol the night Eckles attempted to rape her. Eckles also claimed that his "vocation" was selling drugs.

---

[1] We use initials instead of names for victims of sex crimes to protect their privacy. Division Two General Order 2011-1.

III. CONVICTIONS, PRESENTENCE REPORTS, AND SENTENCING

Following the bench trial, the trial court found Eckles guilty of two counts of second degree child rape, one count of third degree child rape, and attempted third degree child rape. Thereafter, the Department of Corrections (DOC) submitted a presentence investigation report (PSI) with attached "Appendix F" that listed recommended community custody provisions. DOC filed a revised PSI to correct factual inaccuracies in the original PSI. The revised PSI did not include Appendix F, but a new "Appendix H."

The revised PSI stated that a child interviewer interviewed KT once and KR twice at the "SAU" office.[2] The PSI also details Eckles's education and employment history. Eckles attended but did not complete high school and "has worked only two jobs in his life and both of them were in 2012 and 2013." Clerk's Papers (CP) at 28. The first job paid Eckles up to $15 an hour and the other job involved landscaping for about a month and Eckles could not remember how much he was paid.

At the sentencing hearing, the State argued that Eckles lived with his parents and was without steady employment. The State also argued that Appendix H, not Appendix F, should be adopted to set out the community custody conditions. The trial court rejected Appendix F and ruled that Eckles would be on community custody conditions as set out in Appendix H. The trial court signed Appendix H that day. However, the judgment and sentence contained a checked box stating the following: "PSI CONDITIONS—All conditions recommended in the Pre-Sentence Investigation are incorporated herein as conditions of community custody, in addition to any

---

[2] The PSI does not say what "SAU" stands for, but presumably it is the Kitsap County Special Assault Unit.

conditions listed in this judgment and sentence, unless otherwise noted." CP at 47. The trial court

sentenced Eckles to 17½ years minimum in prison and community custody for life.

IV. COMMUNITY CUSTODY CONDITIONS AND LEGAL FINANCIAL OBLIGATIONS

Eckles's community custody conditions included that he shall "[p]ossess/access no

pornography, sexually explicit materials, and/or information pertaining to minors via computer

(i.e. internet)" (CP at 47), "[s]hall not consume alcohol" (CP at 56), shall "[e]nter no bar or place

where alcohol is the chief item of sale" (CP at 47), and "[s]hall not possess tracking equipment"

(CP at 56).[3]

The State asked the court to impose "standard" LFOs and specifically requested a $500

victim assessment fee, a $1,135 court-appointed attorney fee, a $200 filing fee, a $100

deoxyribonucleic biological sample fee, a $100 contribution to Kitsap County Expert Witness

Fund, and a $500 contribution to Kitsap County Special Assault Unit (KCSAU). Defense counsel

did not object to these LFOs. There was no inquiry or further discussion about Eckles's financial

situation or ability to pay the LFOs. The trial court stated it would "impose the standard legal and

financial obligations" and imposed the fees requested by the State. Report of Proceedings (RP)

(Mar. 11, 2015) at 45-46. The judgment and sentence stated the following: "4.1 **LEGAL**

**FINANCIAL OBLIGATIONS—RCW 9.94A.760**. The Court finds that the Defendant has the ability

or likely future ability to pay legal financial obligations." CP at 48. The judgment and sentence

also lists statutory or other authority supporting every other LFO imposed, except where it simply

states, "**$500** Contribution—Kitsap Co. Special Assault Unit." CP at 48. Eckles appeals.

---

[3] The first three community custody conditions were included in the judgment and sentence and Appendix H, the fourth was included in only Appendix H.

ANALYSIS

I.  JUDGMENT AND SENTENCE CLERICAL ERROR

Eckles argues that the judgment and sentence improperly incorporated the community custody conditions set out in the original PSI, Appendix F, when the trial court actually intended to impose the community custody conditions set out in the revised PSI, Appendix H.  Eckles contends that this was a clerical error that should be corrected on remand.  We agree with Eckles that the clerical error should be corrected.

Sentencing errors may be challenged for the first time on appeal.  *State v. Bahl*, 164 Wn.2d 739, 744, 193 P.3d 678 (2008).  Clerical mistakes in judgments and orders arising from oversight or omission may be corrected by the court at any time on the motion of any party.  CrR 7.8(a).

Here, the judgment and sentence contains a checked box incorporating the conditions recommended in the "Pre-Sentence Investigation" and does not mention the *revised* PSI that includes the correct Appendix H.  CP at 47.  This clerical error could cause confusion in the future. We remand to the trial court to correct the judgment and sentence to incorporate the *revised* PSI and Appendix H.  CrR 7.8(a).

II.  COMMUNITY CUSTODY CONDITIONS

A.  UNCONSTITUTIONALLY VAGUE CONDITION

Eckles relies on *Bahl* and *State v. Valencia* to argue that the community custody condition against possession of pornography and/or information pertaining to minors is unconstitutionally vague because it does not provide fair notice of the prohibited behavior and invites arbitrary enforcement of the condition.  169 Wn.2d 782, 239 P.3d 1059 (2010).  The State argues that this

condition is not unconstitutionally vague because language contained in the condition makes clear what is prohibited.[4]  We agree with Eckles.

We review de novo whether a trial court had statutory authority to impose community custody conditions.  *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007).  Under the Fourteenth Amendment of the United States Constitution and article I, section 3 of the Washington Constitution, a condition is unconstitutionally vague if it (1) does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed or (2) does not provide ascertainable standards of guilt to protect against arbitrary enforcement.  *Bahl*, 164 Wn.2d at 752-53.

To decide whether condition terms are unconstitutionally vague, they are considered in the context in which they are used.  *Bahl*, 164 Wn.2d at 754.  When a statute does not define a term, the court may consider the plain and ordinary meaning as set forth in a standard dictionary.  *Bahl*, 164 Wn.2d at 754.  Imposition of an unconstitutionally vague condition is manifestly unreasonable and such conditions must be reversed.  *Valencia*, 169 Wn.2d at 791-92.

In *Bahl*, our Supreme Court held that the condition "'[d]o not possess or access pornographic materials, as directed by the supervising Community Corrections Officer'" was unconstitutionally vague.  164 Wn.2d at 743, 758.  The vagueness determination in *Bahl* ultimately

---

[4] The State also argues that because Eckles did not object to this condition at trial, he did not preserve his arguments.  But a sentencing error, including an erroneous community custody provision, may be challenged for the first time on appeal.  *Bahl*, 164 Wn.2d at 744.  Thus, Eckles can raise this issue for the first time on appeal.  Additionally, the State argues that this condition is proper because it is "crime-related."  But Eckles does not appeal this condition on that basis.

rested on the well-established fact that "pornography" does not have a precise legal definition and is a subjective term. 164 Wn.2d at 755-57.[5]

Here, the State unpersuasively asserts that this case is distinguishable from *Bahl* because the condition prohibited "'pornographic, sexually explicit materials'" and, thus, "'sexually explicit'" is a modifier clarifying the other terms in the condition. Br. of Resp't at 9-10. The contested condition here states that Eckles shall "possess/access no pornography, sexually explicit materials, and/or information pertaining to minors via computer (i.e. internet)." CP at 47. This grammatical structure is not such that "sexually explicit" modifies the terms "pornography" or "information pertaining to minors"; the comma placement makes it clear it modifies only "materials."

The term "pornography" is not statutorily defined and is subjective such that an ordinary person cannot understand what is proscribed. *Bahl*, 164 Wn.2d at 755-57. And it does not provide ascertainable standards of guilt to protect against arbitrary enforcement because an enterprising corrections officer could declare viewing an R-rated movie containing nudity or sexual acts as covered by the term. *Bahl*, 164 Wn.2d at 755-57.

---

[5] *See State v. Sansone*, 127 Wn. App. 630, 634, 111 P.3d 1251 (2005) (holding that a condition of community placement that prohibited the defendant from possessing or perusing pornography without approval from his probation officer was unconstitutionally vague).

The term "and/or information pertaining to minors via computer (i.e. internet)" is even less clear. CP at 47. A search for a Washington statute defining "information pertaining to minors via computer" yields no results.[6] A dictionary search does not offer any additional clarity.[7]

*Valencia* provides some guidance. In *Valencia*, the challenged condition stated that the defendant "'shall not possess or use any paraphernalia'" that can be used for the ingestion or processing of controlled substances. 169 Wn.2d at 785. The *Valencia* court held that this condition was unconstitutionally vague because the term "paraphernalia" is so broad that it includes everyday items and, thus, the term did not provide fair notice or protection from arbitrary enforcement. 169 Wn.2d at 794-95.

Here, the condition "and/or information pertaining to minors via computer" is just as vague as the term "paraphernalia" discussed in *Valencia* and could cover a broad spectrum of information. 169 Wn.2d at 794-95. The condition could cover a news article related to a disease outbreak among children. Because this condition cannot be defined with sufficient definiteness that ordinary people can understand what conduct is proscribed and does not provide ascertainable standards of guilt to protect against arbitrary enforcement, we remand for resentencing. *Bahl*, 164 Wn.2d at 752-53.

---

[6] *See* Washington State Legislature, http://apps.leg.wa.gov/RCW/default.aspx.

[7] The dictionary definition of "information" as a noun is "[k]nowledge communicated by others or obtained from investigation, study, or instruction" or "[k]nowledge of a particular event or situation." WEBSTER'S THIRD NEW COLLEGE DICTIONARY 1160 (2002). The definition of pertain is "[t]o have some connection with or relation to something : reference "or "to belong to something as an attribute or adjunct" or "to be appropriate to something." WEBSTER'S 1688. The definition of child is "a person who has not yet come of age," "an unborn . . . human being," "one who exhibits the characteristics of a very young person," or "a son or a daughter." WEBSTER'S 388.

B. PROHIBITION AGAINST ENTERING PLACES THAT SELL ALCOHOL

Eckles argues that the trial court erred by imposing the community custody condition that he shall "[e]nter no bar or place where alcohol is the chief item of sale" because there is no evidence this condition is related to his crimes. CP at 47. We disagree.

We review whether sentencing conditions are crime related for abuse of discretion. *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008). Under the terms of community custody, a sentencing court has discretionary authority to impose crime-related prohibitions. RCW 9.94A.703(3)(f). A "[c]rime-related prohibition" is one that involves "conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10).

A trial court also has authority to prohibit alcohol consumption as a community custody condition regardless of the underlying offense's nature. Former RCW 9.94A.703(3)(e) (2009). It further has the authority to prohibit the purchase and possession of alcohol if alcohol is "*reasonably related* to the circumstances of [the defendant's] alleged offenses." *State v. McKee*, 141 Wn. App. 22, 34, 167 P.3d 575 (2007) (emphasis added).

Here, both victims, KT and KR, were under the influence of alcohol when Eckles committed the crimes against them, and Eckles was also under the influence of alcohol during at least one of the crimes. Eckles testified that he did not care how old KT was when he raped her because he was "just drunk." 2 RP at 227. Thus, alcohol affected Eckles's judgment about the crimes he committed and, as his and his victims' testimony demonstrate, alcohol was an integral part of the crimes. Therefore, we conclude that the prohibition against entering places that primarily sell alcohol is reasonably related to Eckles's crimes. *McKee*, 141 Wn. App. at 34. The

trial court properly exercised its discretion to prohibit Eckles from frequenting places that primarily sell alcohol. We affirm this condition.

## C. PROHIBITION AGAINST POSSESSION OF TRACKING EQUIPMENT

Eckles argues that the condition that he "[s]hall not possess tracking equipment" is not crime related because there is no evidence he used tracking equipment in relation to any of the crimes.[8] CP at 56. Here, the State concedes that there is no evidence that Eckles's crimes were related to tracking equipment whatsoever. We accept the State's concession that this condition is not reasonably related to the crime. *State v. Kinzle*, 181 Wn. App. 774, 785, 326 P.3d 870, *review denied*, 181 Wn.2d 1019 (2014). We remand to the trial court to strike this condition.

## III. LEGAL FINANCIAL OBLIGATIONS

Eckles argues that the trial court erred by imposing LFOs because the trial court erroneously failed to inquire about his ability to pay discretionary LFOs and that the contribution to the KCSAU and to the expert witness fund were not authorized by statute. We agree that Eckles lacks the ability to pay and remand to the trial court to strike the discretionary LFOs.

### A. FINANCIAL INQUIRY AND ABILITY TO PAY

Eckles argues that the imposition of discretionary LFOs, including a $1,135 discretionary attorney fee, was erroneous because the trial court failed to make the required inquiry into his ability to pay the fees.[9] The State argues that the trial court was informed about Eckles's financial

---

[8] The State again argues that because Eckles did not object to this condition at trial, he did not preserve his arguments against this condition for appeal. But because a sentencing error may be challenged for the first time on appeal, we reject the State's argument. *Bahl*, 164 Wn.2d at 744.

[9] Eckles argues that although he did not object to the imposition of LFOs at trial to preserve this issue for appeal, we should use our discretion to review his LFOs because the trial court did not

status and work history from the PSI. We accept the State's assertion that the trial court was properly informed, but we hold that the trial court erroneously concluded from that information that Eckles had the ability to pay LFOs.

Our review of a trial court's determination of a defendant's ability to pay LFOs is essentially factual and conducted under the clearly erroneous standard. *State v. Bertrand*, 165 Wn. App. 393, 403-04, 267 P.3d 511 (2011). The record must reflect that the sentencing judge considered the defendant's individual financial circumstances and made an individualized inquiry into the defendant's current and future ability to pay. *State v. Blazina*, 182 Wn.2d 827, 837-38, 344 P.3d 680 (2015). This inquiry also requires the trial court to consider other factors such as incarceration and a defendant's other debts when determining a defendant's ability to pay. *Blazina*, 182 Wn.2d at 839.

Here, the State asked the court to impose "standard" LFOs and specifically requested $2,535 in total LFOs, including the $1,135 in attorney fees. The information in the revised PSI and the evidence heard at trial shows that the trial court was well aware of Eckles's financial situation. The revised PSI states that Eckles did not complete high school, has worked only two jobs in his life in 2012 and 2013, made at or below minimum wage at one of the jobs, and worked the other job for only a month. The trial court heard Eckles's only "vocation" was as a drug dealer, he lived with his parents, and he was without steady employment. The trial court sentenced Eckles to 17½ years in prison minimum, after which he will emerge with a scant education and employment history.

---

make the required inquiry into his ability to pay. We agree and exercise our discretion under RAP 2.5 to consider the LFO issues advanced by Eckles.

This evidence shows that the trial court had the necessary information to determine whether Eckles had or will have the ability to pay $2,535 in LFOs. However, in light of the lengthy 17½-year prison term and his extremely limited work history, we hold that the trial court erroneously concluded from this information that Eckles had or will have the ability to pay LFOs. We remand to strike the discretionary LFOs from the judgment and sentence.

B. SPECIAL ASSAULT UNIT CONTRIBUTION

Eckles also argues that the imposition of a $500 contribution to the KCSAU was improper because it was not statutorily authorized. The State does not respond to this argument. We conclude that Eckles is correct.

We review the statutory authorization of the imposition of LFOs de novo. *State v. Hardtke*, 183 Wn.2d 475, 479, 352 P.3d 771 (2015). RCW 10.01.160 directs what costs the trial court can impose on a criminal defendant. *Hardtke*, 183 Wn.2d at 479. The statute states, "Costs shall be limited to expenses *specially incurred by the state in prosecuting the defendant*." RCW 10.01.160(2) (emphasis added). There is no Kitsap County code or ordinance that authorizes the superior court to require defendants to contribute specifically to the KCSAU.

Here, a Kitsap County Sexual Assault Center advocate read a letter on KT's behalf at Eckles's sentencing. And the revised PSI states that a child evaluator interviewed KT once and KR twice at the "SAU" office, but does not state what SAU stands for. Presumably, SAU stands for the KCSAU, but it is not clear that these interviews and/or the Sexual Assault Center advocate's appearance in court cost the State $500 to prosecute this case. Additionally, while the judgment and sentence lists statutory or other authority to support every other LFO imposed, here it simply states, "**$500** Contribution—Kitsap Co. Special Assault Unit." CP at 48. Because there is no clear

showing that this cost was authorized by local or state authority or that the $500 amount was specially incurred by the State in prosecuting Eckles, we reverse the imposition of this discretionary LFO. RCW 10.01.160(2).

## C. EXPERT WITNESS FEE

Eckles argues that the imposition of a $100 contribution to the Kitsap County expert witness fund was not statutorily authorized because no expert witnesses were used at trial. The State argues that Kitsap County authority supports the imposition of this LFO and that the fee need not be imposed to pay an expert used in a particular case.[10] Because Eckles lacks the ability to pay discretionary LFOs, we reverse the imposition of this fee.

Chapter 4.84 Kitsap County Code (KCC) is the "Expert Witness Fund Ordinance." KCC 4.48.010. The ordinance states that this fund "shall be maintained with moneys recovered for the county by the prosecuting attorney pursuant to court orders requiring defendants to reimburse the state for costs of expert witnesses." KCC 4.48.030(d). The fund's exclusive purpose is to "provide reasonable compensation to any expert witness who has provided or who will provide services to the prosecuting attorney." KCC 4.48.040.

The ordinance defines an expert witness as

any person who, by reason of education or specialized experience, possesses superior knowledge respecting a subject about which persons having no particular training are incapable of forming an accurate opinion or deducing correct conclusions or any person skilled in any particular art, trade or profession, being possessed with peculiar knowledge concerning it, and who has given the subject in question particular study, practice or observation.

---

[10] In reply, Eckles argues that even if the Kitsap County Code (KCC) authorized the fee, this county code conflicts with a state statute and the state statute should control in light of this conflict, thereby raising a constitutional preemption question. But we do not address arguments raised for the first time in a reply brief. RAP 10.3(c); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

KCC 4.48.020(3).

Here, the $100 contribution to the expert witness fund cites to "Kitsap County Ordinance 139.1991," which is codified as chapter 4.84 KCC. CP at 48; KCC 4.84.010. The State is correct that the KCC does not require contributions for the county expert witness fund be collected specifically because of and for the State's use of expert witnesses in a particular case. But neither does it require that an expert witness fee be imposed at all. In light of our conclusion that Eckles lacks the ability to pay discretionary LFOs, we strike the $100 expert witness fee.

## IV. APPELLATE COSTS

In light of appellant's indigent status and our presumption under RAP 15.2(f) that he remains indigent "throughout the review" unless the trial court finds that his financial condition has improved, we exercise our discretion and waive appellate costs. RCW 10.73.160(1).

## V. STATEMENT OF ADDITIONAL GROUNDS (SAG)

Eckles filed a SAG asserting that (1) he was denied his time for trial right when the trial court improperly granted a continuance due to docket congestion and (2) that he received ineffective assistance of counsel because his attorney failed to clarify the reason for the continuance or object to it. We disagree.

## A. TIME FOR TRIAL VIOLATION

Eckles claims that the State tried to circumvent his right to a speedy trial by stating that the prosecuting attorney was involved in another case, rather than admitting the truth that "docket congestion" created the prosecutor's absence. On the original trial date, the State moved for a continuance because the prosecutor was involved in another trial set to last two to three weeks. The trial court ruled that there was good cause to continue the trial.

A trial court's ruling on a motion for a CrR 3.3 continuance will not be disturbed absent a showing of a manifest abuse of discretion. *State v. Cannon*, 130 Wn.2d 313, 326, 922 P.2d 1293 (1996). Unavailability of counsel because counsel is in trial on another matter may constitute unforeseen or unavoidable circumstances justifying a trial extension under CrR 3.3(e)(8). *State v. Carson*, 128 Wn.2d 805, 814-15, 912 P.2d 1016 (1996).

Here, there is no evidence in the record that trial was continued for any reason related to "docket congestion." We hold that Eckles's claim fails because the trial court properly granted the continuance due to unforeseen or unavoidable circumstances: the prosecutor's simultaneous involvement in another case. *Carson*, 128 Wn.2d at 814-15. Based on the record before us, the trial court properly granted the motion.

### B. INEFFECTIVE ASSISTANCE OF COUNSEL

Eckles also claims that he received ineffective assistance of counsel because his counsel did not clarify whether the prosecutor was actually in trial for another case or had mismanaged its case load and because his counsel failed to object to the continuance. Eckles must overcome the strong presumption of effective defense counsel and prove that he was denied effective representation and was thereby prejudiced. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011); *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

Performance is deficient if it falls "below an objective standard of reasonableness" given all of the circumstances. *Strickland*, 466 U.S. at 688. Counsel's conduct is not deficient if it can be characterized as a legitimate trial strategy, but the relevant question is not whether counsel's choices were strategic, but whether they were reasonable. *Grier*, 171 Wn.2d at 33-34. A defendant is prejudiced by deficient assistance if there is a reasonable probability that, but for counsel's

errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Failure to make the required showing of either deficient performance or sufficient prejudice defeats an ineffectiveness claim. *Strickland*, 466 U.S. at 700.

Here, defense counsel's failure to object does not amount to deficient conduct. Any objection would have been futile because the trial court properly granted the motion to continue trial due to the State's unavailability. Because Eckles's counsel's actions were reasonable, we hold that Eckles's claim of ineffective assistance of counsel also fails. *Grier*, 171 Wn.2d at 33-34. Eckles does not argue that he was prejudiced and we need not address prejudice when Eckles fails to establish deficient performance. *Strickland*, 466 U.S. at 700.

We affirm Eckles's convictions. We reverse his sentence in part and remand to the trial court to resentence Eckles consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, P.J.

We concur:

LEE, J.

SUTTON, J.

16